UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61003-CIV-ALTMAN/Hunt

**RENGIN GUNDOGDU**,

    *Plaintiff*,

v.

**WDF-4 WOOD HARBOUR PARK OWNER, LLC**, *et al.*,

    *Defendants*.

_____/

## **ORDER**[1]

This is a tenant-eviction case that doesn't belong in federal court. One of our Defendants—WDF-4 Wood Harbor Park Owner, LLC—sued to evict our Plaintiff, Rengin Gundogdu, from a rental property. In response, Gundogdu asserted her own claims against WDF-4 and a second Defendant, Wood Residential Services, LLC. After the two state cases were consolidated, things took a strange turn. For reasons that aren't altogether clear, Gundogdu removed the consolidated state case

---

[1] Federal Rule of Evidence 201 permits a federal court to take judicial notice of state-court records because, generally, those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Paez v. Sec'y Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (quoting FED. R. EVID. 201(b)). "Rule 201 does not require courts to warn parties before taking judicial notice of some fact, but, upon the party's request, it does require an opportunity to be heard after the court takes notice." *Id.* "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in [the] district court." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1205 (11th Cir. 2004) (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). We'll therefore allow this Order to serve as notice of our intent to take judicial notice of any documents filed on the state-court dockets in the following cases: *WDF-4 Wood Harbor Park Owner LLC v. Rengin Gundogdu*, Case No. COCE-21-002144 (Fla. Broward Cnty. Ct. Jan. 14, 2021), and *Rengin Gundogdu v. WDF-4 Wood Harbor Park Owner LLC et al.*, Case No. COCE-21-012326 (Fla. Broward Cnty. Ct. Mar. 5, 2021). If Gundogdu objects to this decision, she may note that objection in a motion for reconsideration. Any such motion must be filed **within 28 days** of this Order and **may be no more than 20 pages in length**. If the motion for reconsideration is late or exceeds **20 pages**, it will be stricken for non-compliance.

to us under the pretense that she was filing an original complaint against the Defendants.[2] Once here, Gundogdu amended her complaint three separate times. Now, the Defendants have filed a motion to dismiss—which, for two reasons, we grant. *First*, if we (like the parties) treat Gundogdu as having removed the state litigation, then we lack subject-matter jurisdiction over this case. *Second*, if we assume (instead) that Gundogdu filed an original complaint in our Court, then we abstain in favor of the state-court action.

## PROCEDURAL HISTORY

On January 14, 2021, WDF-4 (the state-court plaintiff), filed eviction proceedings against Gundogdu (the state-court defendant).[3] *See* State Compl. [Eviction Doc. Jan. 14, 2021]. We'll call this the First State-Court Case. Gundogdu answered on January 26, 2021. *See* Gundogdu State Answer [Eviction Doc. Jan. 26, 2021]. On March 5, 2021, she filed a separate state-court action against WDF-4 and a related entity, Wood Residential Services.[4] This was the Second State-Court Case. WDF-4 filed a motion to consolidate the two cases, *see* Motion to Consolidate [Eviction Doc. Apr. 2, 2021], which the state court granted, *see* Order of Consolidation [Eviction Doc. Apr. 8, 2021]. At that point, the Second State-Court Case was folded into the First State-Court Case—with Gundogdu aligned as the state-court defendant and counter-plaintiff. When WDF-4 filed an amended complaint, *see* State Am. Compl. [Eviction Doc. Apr. 5, 2021], and answered Gundogdu's counterclaims, *see* Answer to

---

[2] In her Second Amended Complaint in our case, Gundogdu added two more Defendants, Joseph Keough and Patrick Trask. *See* Second Am. Compl. [ECF No. 22]. The Defendants' Motion to Dismiss asks us, in the alternative, to quash service on Keough and Trask. But, because we're granting the Defendants' motion to dismiss, we needn't reach the question of service here.

[3] *WDF-4 Wood Harbor Park Owner LLC v. Rengin Gundogdu*, Case No. COCE-21-002144 (Fla. Broward Cnty. Ct. Jan. 14, 2021). Because Broward County Court doesn't number its docket entries, we'll cite to documents filed on that docket as ["Eviction Doc. [Date]"].

[4] *Rengin Gundogdu v. WDF-4 Wood Harbor Park Owner LLC et al.*, Case No. COCE-21-012326 (Fla. Broward Cnty. Ct. Mar. 5, 2021).

2

State Counterclaims [Eviction Doc. Apr. 23, 2021], Gundogdu moved to dismiss WDF-4's amended complaint, *see* Gundogdu State MTD [Eviction Doc. Apr. 12, 2021].

That's when things get interesting. On May 11, 2021, Gundogdu filed a complaint in our Court. *See* Compl. [ECF No. 1]. In doing so, however, she didn't suggest that she was trying to remove a state-court case, and she didn't allege any basis on which we could exercise subject-matter jurisdiction. *See generally id.* So, we entered an Order to Show Cause, which directed her to do just that. *See* First Order to Show Cause [ECF No. 5]. In her response to our order to show cause, Gundogdu described several new claims that did not appear in her original complaint, including claims under the Fair Housing Act and the CARES Act. *See* Response to Order to Show Cause [ECF No. 8]. Seeing these as plausible bases for federal jurisdiction, we entered a second Order to Show Cause, instructing her to amend her complaint and to set out *all* grounds on which she sought relief. *See* Second Order to Show Cause [ECF No. 11].

On June 16, 2021, Gundogdu filed her amended complaint. *See* Am. Compl. [ECF No. 14]. But a week and a half later, she filed a Notice of Removal, in which she purported to recast this federal case as a removal of the consolidated state-court case. *See* Notice of Removal [ECF No. 15]. She then amended her complaint again, adding Fort Lauderdale 310 LLC and two Wood Residential Services managers, Joseph Keough and Patrick Trask, as additional defendants. *See* Second Am. Compl. [ECF No. 22]. We dismissed that complaint as a shotgun pleading. *See* Order Dismissing Second Am. Compl. [ECF No. 56]. In doing so, we granted Gundogdu leave to amend for a third time, *see id.* at 1, an opportunity she promptly availed herself of, *see* Third Am. Compl. [ECF No. 57]. In response to this fourth iteration of Gundogdu's claims, the Defendants have filed their Motion to Dismiss the Amended Complaint (the "Motion") [ECF No. 59]. In that Motion—which we adjudicate here—the Defendants contend that: (a) the removal was procedurally improper; (b) we lack subject-matter jurisdiction; (c) we should abstain under the doctrines the Supreme Court laid out in *Colorado River*

3

*Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Younger v. Harris*, 401 U.S. 37 (1971); and (d) the Third Amended Complaint is still a shotgun pleading. *See* Motion at 1.

## THE LAW

Under Federal Rule of Civil Procedure 12(b), a defendant may move to dismiss a claim for one or more of seven reasons: (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficiency of process; (5) insufficiency of service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19. *See* FED. R. CIV. P. 12(b). A motion to dismiss under Rule 12(b)(1) may attack subject-matter jurisdiction either facially or factually. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). On a facial challenge, the district court must, as with other Rule 12(b) motions, limit its review to the factual allegations in the complaint—accepting well-pled allegations as true. *Id.* A factual attack, however, challenges "the existence of subject matter jurisdiction in fact" and requires the court to examine materials outside of the pleadings—such as testimony, declarations, and affidavits—to ensure the proper exercise of its jurisdiction. *Id.*

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679 (quoting *Twombly*, 550 U.S. at 555).

The general removal statute, 28 U.S.C. § 1441, authorizes the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Removal may be based on either diversity jurisdiction under 28 U.S.C. § 1332(a) or federal-question jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1441(b)–(c). Either way, of course, "only state-court actions that originally could have been filed in federal court may be removed to federal court by

the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Moreover, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"Because removal is only permissible when [the] plaintiff's claim could have been filed in federal court originally, we must look to [the] plaintiff's claim to determine whether removal was appropriate." *Burns*, 31 F.3d at 1095. "A defendant may not generally remove a case to federal court unless the *plaintiff's* complaint establishes that the case arises under federal law." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004) (emphasis in original) (quoting *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983)). "There can be no federal question jurisdiction or removal based on an argument raised by the defense, whether that argument is a defense or a counterclaim." *Bank of N.Y. v. Angley*, 559 F. App'x 956, 957 (11th Cir. 2014); *see also Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("It follows that a counterclaim—which appears as part of the defendant's answer, not as a part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction."); *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003) ("[U]nless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court on this basis, even though a possible defense might involve a federal question.").

Gundogdu has filed her complaint *pro se*. A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se*."); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Still, while we treat *pro se* litigants with some leniency, "this

5

leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *2 (11th. Cir 2021) (quoting *GJR Inv., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Notably, the requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016); *see also Saunders*, 766 F.3d at 1266 (recognizing that *Twombly* and *Iqbal* apply to *pro se* complaints).

## ANALYSIS

Although Gundogdu initiated this case by filing a complaint—which the Defendants have moved to dismiss—both sides now agree that what she really did was *remove* her counterclaims from the state-court case. *See, e.g.*, Motion at 3 ("On June 22, 2021, Gundogdu filed a 'Notice of Removal of Civil Action' in the First State Court Case, wherein she referred to herself as the Defendant. *See* Exhibit J. Gundogdu filed a similar document here. ECF No. 15. In the Notice of Removal, Gundogdu claims that this Court has federal question jurisdiction and diversity jurisdiction."); *see also* Response at 4 [ECF No. 61] ("In this case, Gundogdu who is pro se litigant discovered grounds for removal to higher court and federal ground is available." (errors in original)).

For a couple reasons, though, it's somewhat awkward to approach the case this way. For one thing, the case style lists Gundogdu as the "Plaintiff," with the remaining parties aligned as "Defendants"—even though, if we were to treat Gundogdu as a remover, then the parties should retain their original state-court designations (*i.e.*, Gundogdu should be our "Defendant" and WDF-4 our "Plaintiff"). For another, if Gundogdu had really removed the case, then the Defendants' motion would be a "motion to remand," not (as it's characterized here) a "motion to dismiss."[5]

---

[5] Although the Motion is styled as a Motion to Dismiss, the Defendants *do* ask for a remand (albeit in the alternative). *See* Motion at 20 ("[T]he Defendants respectfully request that this Court enter an order

Despite these reservations, we'll go along with the parties' view of the posture of this case. In doing so, we'll treat the Defendants' Motion as a "motion to remand" because, if Gundogdu had removed her counterclaims, that's what the motion would be, and because, as we've explained (*q.v.*, note 5), the Motion *does* request a remand. As we'll explain, however, we lack jurisdiction to adjudicate the state-court eviction claim WDF-4 brought against Gundogdu. And, while some of Gundogdu's counterclaims might arise under federal law, she cannot remove those counterclaims to federal court. We thus remand her case back to Broward County.[6] But here's the thing: Even if Gundogdu had tried to file her counterclaims as original causes of action in federal court, we'd still have declined to exercise jurisdiction over her case for the reasons the Supreme Court outlined in *Colorado River*. We address each of these problems in turn.

### I. Removal

We lack subject-matter jurisdiction over the case Gundogdu has removed to federal court. Gundogdu is clear that what she's tried to do is remove her own state-court counterclaims, which (she

---

. . . dismissing Gundogdu's TAC in its entirety for lack of subject matter jurisdiction or dismissing the TAC *with prejudice* for failure to state a claim; or, in the alternative, *remanding this case back to state court for resolution of the Corporate Defendants' remaining claims . . . .*" (emphasis added)).

[6] There's nothing improper about remanding the case in these circumstances. "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1995) (citations omitted). It is, in fact, the Court's responsibility to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "[A] district court can remand a removed case back to state court only if it determines that it lacks subject matter jurisdiction, or if a party moves to remand the case because of a defect in the removal process." *Ficus Villas Condo Assoc., Inc. v. Hardford Steam Boiler Inspection and Ins. Co.*, 832 F. App'x 695, 695 (11th Cir. 2020); *see also Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1245 (11th Cir. 2004) ("[B]ased on the language of § 1447(c) the district court may not *sua sponte* decide to remand the case for any procedural defect *other than lack of subject matter jurisdiction*." (emphasis added)). Our decision to remand this case is proper on either ground. *First*, it isn't *sua sponte*. As we've discussed (*q.v.*, note 5), the Defendants' Motion did request a remand. *Second*, we're remanding precisely because we lack subject-matter jurisdiction. In any event, Gundogdu had ample notice of her case's jurisdictional defects because the Defendants identified those defects in their Motion. *See* Motion at 4–6. Indeed, Gundogdu specifically responded to those jurisdictional arguments. *See* Response at 5–7.

says) arise under federal law. *See* Third Am. Compl. at 3 ("The basis for federal court jurisdiction is: Federal Question and Diversity of Jurisdiction."); Response at 5 ("Federal Court has jurisdiction in this matter on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331, § 1332 and § 1441. These are not state law claims as Defendants argue but they are related to federal laws, U.S. Constitution and their violations." (errors in original)). But her counterclaims and defenses cannot form the basis of a proper removal. *See, e.g., Holmes Grp.*, 535 U.S. at 831 ("[A] counterclaim . . . cannot serve as the basis for 'arising-under' jurisdiction."). And that's reason enough to remand her case.

We'll give her the benefit of the doubt, though, and review WDF-4's state-court complaint to see if any of *its* claims provide a basis for us to exercise subject-matter jurisdiction over this case. In doing so, we'll consider *both* whether that complaint triggered our federal-question jurisdiction *and* whether it implicated our diversity jurisdiction. We have little trouble concluding that it did neither.

We start with federal-question jurisdiction. WDF-4's state-court complaint is a boilerplate landlord-tenant action, through which the landlord (WDF-4) was trying to evict its tenant (Gundogdu). *See* Compl. [Eviction Doc. Jan. 14, 2021]. Needless to say, nothing about that eviction claim triggers our federal-question jurisdiction. *See, e.g., OG Grp., LLC v. Marcisak*, 2018 WL 1902077, at *3 (S.D. Fla. Jan. 23, 2018) (Hunt, Mag. J.) (recommending remand of an eviction action for lack of subject-matter jurisdiction), *report and recommendation adopted*, Case No. 17-cv-62397 (S.D. Fla. Feb. 8, 2018) (Zloch, J.), ECF No. 8; *see also Diversified Props., LLC v. Castleberry*, 2017 WL 2859645, at *4 (M.D. Fla. July 5, 2017) (same).

That was essentially the holding of *Federal Home Loan Mortgage Corp. v. Bentley*, a Northern District of Georgia case in which the plaintiff (a mortgage lender) filed an eviction action against a borrower (Bentley) in state court, *see* 2014 WL 12860028, at *2 (N.D. Ga. Oct. 30, 2014). Bentley tried to remove the eviction claim, insisting that the lender's actions violated the Fair Debt Collection Practices Act. *Id.* The district court remanded the case, reasoning that "no federal question is presented

8

in a dispossessory proceeding." *Id.* "There is no evidence," the court explained, "and there are no allegations in the notice of removal which would warrant the application of an exception to the well-pleaded complaint rule." *Id.* It was irrelevant, the court added, that Bentley's defenses arose under federal law because, as the Supreme Court has said, the propriety of a removal turns *only* on the claims in the state-court complaint. *See id.* (citing *Caterpillar, Inc.*, 482 U.S. at 392).

Our case is very similar. Gundogdu has removed a state-court eviction case solely on the basis of the federal questions *she* raised in her defenses and counterclaims. *See* Third Am. Compl. ¶ 1; Response ¶ 2, 14–15. That's not how removal works. *See Bank of N. Y.*, 559 F. App'x at 957 ("There can be no federal question jurisdiction or removal based on an argument raised by the defense, whether that argument is a defense or a counterclaim."); *OG Grp., LLC*, 2018 WL 1902077, at *3 ("[T]here is no original jurisdiction that would permit this residential tenant eviction action to be removed to this Court since no federal question or diversity jurisdiction exists.").

Gundogdu's claim to diversity jurisdiction fares no better. To trigger our diversity jurisdiction, "the matter in controversy [must] exceed[ ] the sum or value of $75,000, exclusive of interest and costs," 28 U.S.C. § 1332(a), and the controversy must be "between (1) citizens of different states; (2) citizens of a State and citizens or subjects of a foreign state . . . ; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; [or] (4) a foreign state, defined in section 1603(A) of this title, as plaintiff and citizens of a State or of different States," 28 U.S.C. § 1332 (a)(1)–(4). "Diversity jurisdiction under § 1332 requires complete diversity; every plaintiff must be diverse from every defendant." *Roberts v. Clifford*, 2020 WL 4350727, at *1 (S.D. Fla. July 29, 2020) (Altman, J.) (cleaned up). For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

9

Gundogdu tells us that she is a citizen of Florida. *See* Third Am. Compl. ¶ 6. She then alleges that "Defendant, Fort Lauderdale 310, LLC, is a foreign limited liability company incorporated under the laws of the State of Delaware . . . and has its principal place of business in the State of Florida." *Id.* ¶ 9. Gundogdu has thus failed to allege complete diversity between the parties because one of the corporate defendants has its principal place of business in Florida—the same state she's a citizen of— and a corporation is a citizen of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Recall that, to establish diversity, the plaintiff must allege that "every plaintiff [is] diverse from every defendant." *Roberts*, 2020 WL 4350727, at *1.

Gundogdu has a problem with the amount in controversy, too. Remember that "[a] defendant may not generally remove a case to federal court unless the *plaintiff's* complaint establishes that the case arises under federal law." *Aetna Health*, 542 U.S. at 207–08 (emphasis in original); *see also, e.g.*, *First Guar. Bank & Tr. Co. v. Reeves*, 86 F. Supp. 1147, 1155 (M.D. Fla. 2000) (Nimmons, J.) ("The weight of authority compels the conclusion that a federal district court may not consider a counterclaim when determining the amount in controversy in the removal context."). But the state-court eviction complaint in our case is clear that the amount in controversy is just $7,736.42. *See* State Court Am. Compl. [Eviction Doc. Apr. 5, 2021] ¶ 8 ("Defendant(s) owe(s) Plaintiff, the following: rent for the month(s) stated in paragraph 6, totaling $7736.42, and rent as it becomes due." (errors in original)). Since Gundogdu doesn't allege any facts from which we might infer that the state-court complaint implicated some larger figure, she's failed to trigger our diversity jurisdiction.

Either way, because we lack subject-matter jurisdiction over this removed action, we **GRANT** the Defendants' Motion to Dismiss and remand this case to state court.[7]

---

[7] Note that Gundogdu's removal was also *procedurally* improper. Under the removal statute, she had 30 days to remove the state-court case to federal court. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon

## II. Abstention

As we've said, we could also treat Gundogdu as having filed her claims under our original jurisdiction. Handling the case this way would have several benefits. *One*, we wouldn't have to re-align the parties: Gundogdu is, after all, already listed as our "Plaintiff." *Two*, we wouldn't have to recharacterize the Defendants' motion as one for remand. *Three*, we wouldn't have to restyle Gundogdu's "Third Amended Complaint" as a "Notice of Removal." *Four*, based on the allegations Gundogdu has advanced in that complaint, we could plausibly suppose that she's established our subject-matter jurisdiction to hear the case. *See* Third Am. Compl. ¶ 1 ("Defendants Wood Partners violated national Federal Eviction Ban under the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116-136."); *id.* ¶ 3 ("Defendants Wood Partners engaged in a pattern of discrimination continuously as defined by federal and state Civil Rights . . . in violation of Civil Rights, Florida Civil Rights Act of 1992 and Fair Housing Act.") Even if we viewed the case this way,

---

which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."). She missed this deadline by over two months. WDF-4 filed its eviction claim against her on January 14, 2021. *See* State Court Compl. [Eviction Doc. Jan. 14, 2021]. And WDF-4 served its complaint on January 21, 2021. [Eviction Doc. Jan. 21, 2021]. Gundogdu then had 30 days—that is, until February 20, 2021—to remove the case to federal court. But she didn't file her complaint in this Court—which she's now styled as her Notice of Removal—until May 11, 2021. *See generally* Docket. That's 80 days too late.

And WDF-4's decision to file an amended complaint didn't toll this 30-day period. While the "'revival exception' allows a defendant who fails to exercise his removal rights on the first available basis to newly assert the right to remove based on the occurrence of certain later events," *Doe v. Fla. Int'l Univ. Bd. of Tr.*, 464 F. Supp. 2d 1259, 1261 (S.D. Fla. 2006) (Ungaro, J.), "[t]his narrow exception is limited to two types of cases: (1) where the plaintiff deliberately misleads a defendant about the true nature of the case until the thirty-day period expires; or (2) where an amended complaint 'fundamentally alters' the nature of the case to such an extent that it creates 'an essentially new lawsuit,'" *id.* (quoting *Clegg v. Bristol-Myers Squibb Co.*, 285 B.R. 23, 31 (M.D. Fla. 2002) (Corrigan, J.)). Neither exception applies here. WDF-4's original eviction complaint was substantively identical to its amended complaint; and the amended complaint didn't "fundamentally alter" the nature of the case. To the contrary, both complaints asserted the same claim—and sought the same damages—on the very same facts. *Compare* State Court Compl. [Eviction Doc. Jan. 14, 2021], *with* State Court Am. Compl. [Eviction Doc. Apr. 5, 2021].

11

though—and, again, Gundogdu isn't asking us to—we'd still abstain from exercising our jurisdiction for the reasons the Supreme Court outlined in *Colorado River*.[8]

In *Colorado River*, the Supreme Court gave district courts the discretion to stay or dismiss a suit "in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817. While "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction," *McClellan v. Carland*, 217 U.S. 268, 282 (1910), "these [abstention] principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Colo. River*, 424 U.S. at 817 (cleaned up).

At the same time, federal courts have an "unflagging obligation . . . to exercise the jurisdiction given them," so "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813, 817. For *Colorado River* to apply, then, the "federal and state proceedings [must] involve substantially the same parties and substantially the same issues." *Ambrosia Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). In deciding whether to abstain under *Colorado River*, courts in our Circuit consider the following factors:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

---

[8] The Defendants also ask us to abstain under the *Younger* doctrine, *see* Motion at 12 (citing *Younger v. Harris*, 401 U.S. 37 (1971))—and, here again, they probably have a point. Gundogdu is, after all, asking us to interfere with an ongoing state proceeding. *See* Third Am. Compl. ¶ 30 (requesting "that injunctive relief be provided that prevents Defendants, their successors, their agents and employees, from continuing unlawful practices"); *see also Younger*, 401 U.S. at 44 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). But we needn't reach *Younger*—or its various exceptions—because we plainly lack jurisdiction over Gundogdu's removal and because, even if we didn't, we would abstain under *Colorado River*.

*Id.* at 1331. In addition, the Supreme Court has said that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983). "Abstaining when litigation is reactive or vexatious furthers the important federal policy of prohibiting forum shopping." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1343–44 (S.D. Fla. 1999) (Davis, C.J.). These factors strongly support the Defendants' request for abstention here. We address each in turn.

The first factor—"whether one of the courts has assumed jurisdiction over property"—is "not at issue, as this case does not involve assuming jurisdiction over property." *Shell v. Schwartz*, 2008 WL 11422553, at *4 (S.D. Fla. Feb. 5, 2008) (Dimitrouleas, J.). This first factor, then, is neutral.

The second factor—"the inconvenience of the federal forum"—is likewise inapposite since both the federal and the state court are in Broward County, Florida. *See, e.g.*, *Ambrosia*, 368 F.3d at 1332 ("This factor should focus primarily on the physical proximity of the federal forum to the evidence and the witnesses."). This second factor, too, is neutral.

The third factor, however—"the potential for piecemeal litigation"—weighs heavily in favor of abstention. Gundogdu is simply attempting to relitigate her dispute with the Defendants—over the propriety of her eviction—in a different forum. That's precisely the kind of "abnormally excessive or deleterious" litigation that *Colorado River* was designed to eliminate. *Ambrosia Coal*, 368 F.3d at 1333. It's true (of course) that a federal court need not abstain *solely* because of repetition or interrelatedness, but a "significant potential that a decision in the state action will moot the issue pending before the [federal] Court" tips the scales in favor of abstention. *O'Dell v. Doychak*, 2006 WL 4509634, at *7 (M.D. Fla. Oct. 20, 2006) (Fawsett, J.) (finding that abstention was appropriate where the state court's ruling would assist the court in "render[ing] a more accurate decision"). Here, both the state and federal actions involve "the same facts," mostly the same "parties," and the very same "set of issues." *Shell*, 2008 WL 11422553, at *4. Litigating them in two separate fora would thus lead to inconsistent

decisions, create piecemeal litigation, and encourage future litigants to engage in forum shopping. This third factor, in short, militates strongly in favor of abstention.

The fourth factor—"the order in which the fora obtained jurisdiction"—likewise leans towards abstention. Admittedly, this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. By either measure, though, this factor supports the Defendants. WDF-4 filed its eviction claim against Gundogdu on January 14, 2021. *See* State Court Compl. [Eviction Doc. Jan. 14, 2021]. Gundogdu didn't file this federal case until May 11, 2021 (almost four months later). *See* Compl. [ECF No. 1]. Gundogdu then failed to serve her federal complaint on the original federal Defendant (WDF-4) until September 1, 2021 (some eight months after the state case was filed), *see* Return of Service [ECF No. 24]—by which time the state court had already ruled on Gundogdu's motion to dismiss, *see* State Court Order Denying Motion to Dismiss [Eviction Doc. June 4, 2021], and the parties had already participated in mediation, *see* State Court Mediation Report [Eviction Doc. May 6, 2021]. By contrast, we here in federal court are just now adjudicating the Defendants' Motion to Dismiss. This factor, in other words, strongly favors abstention.

The fifth factor—"whether state or federal law will be applied"—supports neither side. "Under this system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *see also Indep. Serv. Provider, LLC v. Grayson*, 2021 WL 2828238, at *2 (M.D. Fla. Apr. 21, 2021) (Byron, J.) ("State courts are perfectly capable of applying federal law."). This factor is thus neutral.

The sixth factor—"the adequacy of the state court to protect the parties' rights"—is likewise neutral. "A federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *31 Foster Child. v. Bush*, 329 F.3d 1255, 1279 (11th

Cir. 2003) (cleaned up). Gundogdu is dissatisfied with the state court's decision-making, *see* Response ¶ 17, but she hasn't alleged that the state court is somehow incapable of handling the constitutional issues she's raised. To the contrary, she agrees that "[t]he State Court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction in this case." *Id.* Since this sixth factor weighs for or against abstention only "when one of the fora is inadequate," *Ambrosia*, 368 F.3d at 1334, we'll treat this factor as neutral.

The seventh (and final) factor—"the vexatious or reactive nature" of the second action—plainly favors abstention. *See Moses H. Cone*, 460 U.S. at 17 n.20. By her own admission, Gundogdu wants to stay here in federal court because she's dissatisfied with the state court's handling of her case. *See* Response ¶ 17 ("State Court completely under looked the Federal Eviction Ban and sided with Defendants. State Judge stated during the hearing done by zoom that Plaintiff should evict the Dwelling. That would have severely harmed Plaintiff by leaving her homeless while her rent assistance application was pending approval." (errors in original)). Indeed, given that she's regurgitated here many of the same defenses and counterclaims she asserted in the state case, it's hard to see this federal litigation as anything other than a reaction to the original state action. *See, e.g.*, *Bosdorf*, 79 F. Supp. at 1346 ("[I]t is difficult to conceive of the instant case as anything other than forum shopping and 'reactive litigation,' [where] . . . . [a]fter receiving the second adverse jurisdictional ruling from the Florida court, Plaintiffs tried yet again to find a more favorable forum by filing the same action in this Court.").

All three of the applicable (that is, non-neutral) factors thus weigh decisively in favor of abstention. As a result, even if we were to treat Gundogdu as the "Plaintiff" in this case, we'd still decline, under *Colorado River*, to exercise jurisdiction over her claims.

\* \* \*

After careful review, we hereby **ORDER AND ADJUDGE** as follows:

1. The Motion to Dismiss [ECF No. 59], which urges us (in the alternative) to remand this case to state court, is **GRANTED**.

2. This case is **REMANDED** to the County Court of the 17th Judicial Circuit in and for Broward County, Florida.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 8th day of July 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Counsel of record
      Rengin Gundogdu, *pro se*